IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| **CALVIN TANKESLY, JR.,** | ) |
| **Plaintiff,** | ) |
| v. | ) NO. 1:20-cv-00017 |
| **ARAMARK SERVICES, INC., et al.,** | ) **JUDGE CAMPBELL** |
| | ) **MAGISTRATE JUDGE HOLMES** |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

Plaintiff Calvin Tankesly, Jr., an inmate of the Turney Center Industrial Complex (TCIX) in Only, Tennessee, has filed a pro se Complaint under 42 U.S.C. § 1983 (Doc. No. 1) and an application for leave to proceed in forma pauperis (IFP). (Doc. No. 8.)

The case is before the Court for ruling on the IFP application and for initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

## I. APPLICATION TO PROCEED IFP

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because it is apparent from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 2) is **GRANTED**.

Pursuant to 28 U.S.C. §§ 1915(b) and 1914(a), Plaintiff is nonetheless assessed the $350.00 civil filing fee. The warden of the facility in which Plaintiff is currently housed, as custodian of Plaintiff's trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of

the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10.00. 28 U.S.C. § 1915(b)(2). Payments shall continue until the $350.00 filing fee has been paid in full to the Clerk of Court. 28 U.S.C. § 1915(b)(3).

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility where Plaintiff is housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

## II. INITIAL REVIEW

### A. PLRA Screening Standard

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face,"

2

such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

**B. Section 1983 Standard**

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

3

**C. Allegations and Claims**

Plaintiff alleges that, in the wake of treatment for throat cancer in 2013 that resulted in extensive damage to his throat and the loss of his saliva glands, he was prescribed a "non-standard diet" while incarcerated due to the limited number of food items he can chew and swallow. (Doc. No. 1 at 6.) Beginning in September 2016, when the state contracted with Aramark Services, Inc. to provide meals to its inmates, Plaintiff has been denied the prescribed, non-standard diet. (*Id.*) He alleges that he was transferred from the Northwest Correctional Complex (NWCX) to TCIX in January 2019 after persistently demanding his prescribed meals from "Aramark defendants at NWCX." (*Id.*)

Since Plaintiff's transfer to TCIX, Defendant Aramark Services, Inc. and its employees Powers, Adkinson, and Breece (collectively, "the Aramark Defendants") have refused to serve his prescribed diet, other than at breakfast. (Doc. No. 1 at 6, 8.) He has been prescribed a diet including extra gravy, jelly, and butter, but the Aramark Defendants refuse to serve such food to him at lunch and dinner despite having the food in inventory. (*Id.* at 11.) Instead, they serve him a bland diet consisting of "ground processed meats, dry rice, dry noodles, apples, etc." (*Id.* at 10–11.) Although his breakfasts are typically in compliance with his prescribed diet, Plaintiff does not receive breakfasts that comply with that diet when TCIX is under lockdown, nor does he receive breakfast at all on the weekends. (*Id.* at 8, 12.)

Consequently, Plaintiff alleges that he has "suffer[ed] from lack of nutrition well below the minimal 2,500 calories a day resulting in debilitating health and a diminished quality of life." (*Id.* at 8.) Specifically, he alleges "weight loss, dizzy spells, light headedness, fatigue, and seizures from lack of sufficient nutrition." (*Id.* at 9.) Plaintiff alleges that the Aramark Defendants' failure to comply with his dietary needs "has required Centurion Medical Contractor to provide

4

supplemental nutrition three (3) times a day seven days a week to compensate for the nutrition that the defendants failed to provide." (*Id.* at 12.) He states that the three daily supplements delivered by the medical staff provide "a total supplemental caloric intake of 1,425 calories per day." (*Id.* at 12 n.13.)

Plaintiff alleges that Defendants Genovese and Oakes—the Warden and Associate Warden of TCIX, respectively—know of and acquiesce in the Aramark Defendants' refusal to serve Plaintiff with an appropriate diet. (*Id.* at 6.) He further alleges that Genovese has continually overridden rulings of the grievance committee that agreed with Plaintiff concerning the diet he should be receiving. (*Id.* at 11.) He alleges that, in November 2019, Oakes instructed a prison doctor "not to write specific orders" regarding Plaintiff's medical diet. (*Id.*)

Plaintiff also sues the TCIX employee who oversees inmate job assignments, Christa Jenkins, and the inmate trust fund account custodian, Joanna Cooper. Plaintiff alleges that Jenkins moved him from his "library legal aide job" to a newly created, "fictitious [and] unauthorized job" in the library after he claimed that Jenkins had violated policy by "jump[ing] over Plaintiff to assign another inmate not qualified for the position of library legal aide," and without providing him a due process hearing. (*Id.* at 16 & n.17.) Plaintiff also alleges that Jenkins's actions with respect to his prison job were taken in furtherance of a conspiracy with Defendant Oakes, whom Plaintiff had reported to various authorities for threatening behavior. (Doc. No. 1 at 13, 16.) Although the complaint indicates that Jenkins and Oakes thereafter conspired to have Plaintiff segregated for 28 days without a due process hearing (*id.* at 16), Plaintiff clarifies in an accompanying affidavit[1] that "defendant Oakes segregate[d] Plaintiff" in retaliation for Plaintiff's

---

[1] The Court may consider attachments to the complaint in performing the screening required by the PLRA. *Powell v. Woodard*, No. 17-6212, 2018 WL 5098824, at *2 (6th Cir. May 21, 2018) (citing, *e.g.*, *Arauz v. Bell*, 307 F. App'x 923, 925 n.1 (6th Cir. 2009) ("We are also permitted to consider materials

5

attempt to document a violation of TDOC policy when Jenkins passed him over for a library legal aide position in favor of an unqualified inmate. (Doc. No. 1-1 at 3.) In another attachment to his complaint, however, Plaintiff states that Oakes retaliated against him after discovering that he had assisted another inmate in filing a civil rights complaint against Oakes. (Doc. No. 1-14 at 1.)

As for Defendant Cooper, Plaintiff alleges that she illegally withdrew $25.00 from his account without a due process hearing, based on "records . . . fabricated by defendant Powers" to justify a billing that Plaintiff disputed. (*Id.* at 7, 13 & n. 16.) This billing appears to be associated with a claim that Plaintiff failed to sign for his special meal trays when he picked them up on four days in January 2020. (*See* Doc. Nos. 1-6, 1-7.)

Plaintiff sues all individual Defendants in both their official and individual capacities. (*Id.* at 4–5.) He charges Aramark Services, Inc. and the individual Defendants with conspiring to deprive him of "basic nutrition" and "human dignity" in violation of the state and federal constitutions, arguing that by their deliberate indifference to his dietary needs and his "inalienable right to human dignity and/or quality of life," they subjected him to cruel and unusual punishment. (*Id.* at 15.) As relief, Plaintiff seeks an award of compensatory and punitive damages against Defendants "in their personal capacity," as well as any declaratory and injunctive relief to which he may be entitled. (*Id.* at 17.)

### D. Analysis

Although "there is no constitutional right for each prisoner to be served the specific foods he desires," the Eighth Amendment is violated where prison meals fail to meet nutritional needs. *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015). The Eighth Amendment "protects a

---

attached to the complaint, and we will reference exhibits that Arauz attached to his complaint when these attachments clarify matters.")).

prisoner's right to receive food with sufficient nutrition that is adequate to maintain normal health." *Kensu v. Michigan Dep't of Corr.*, No. 18-cv-10175, 2020 WL 1698662, at *11 (E.D. Mich. Apr. 8, 2020) (citing *Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977)). Ordinary modifications to a prisoner's diet will not violate his Eighth Amendment rights so long as "the prisoner's diet, as modified, is sufficient to sustain the prisoner in good health." *Id.* (quoting *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002)). But in the context of dietary modifications necessitated by medical concerns, the Eighth Amendment is violated when the prison's food service is delivered with deliberate indifference to the prisoner's serious medical needs, which the prisoner may show by demonstrating that his food service "was objectively harmful enough to establish a constitutional violation and that the official[s] acted with a culpable enough state of mind, rising above gross negligence." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).

Taking Plaintiff's allegations as true and construing them in the light most favorable to him, he has adequately alleged a violation of the Eighth Amendment with regard to the meals he receives at TCIX, which have resulted in harm due to Plaintiff's inability to eat enough for adequate nourishment, and which Aramark provides with deliberate indifference to the specific directions of Plaintiff's medical providers. Plaintiff has also adequately alleged that Aramark is a state actor and thus a proper Section 1983 defendant because it performs the traditional state function of supplying inmate meals, pursuant to a 2016 contract with the State of Tennessee. *See Dotson v. Shelby Cnty.,* No. 13-2766-JDT-TMP, 2014 WL 3530820, at *13 (W.D. Tenn. July 15, 2014) (citing, *e.g.*, *Wilson v. ABL Food Servs.*, No. 3:11-0530, 2012 WL 3779472, at *5 (M.D. Tenn. Aug. 7, 2012) (holding, on a motion for summary judgment, that "Defendant ABL, a corporation that contracts with the State to provide food to inmates, is considered a state actor for

7

purposes of § 1983") (report and recommendation), *adopted*, 2012 WL 3779470 (M.D. Tenn. Aug. 30, 2012). But the corporation itself, as distinguished from its individual employees, may only be found liable for harms caused by the execution of a corporate policy. *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001). Liberally construing Plaintiff's allegation of harm stemming from Aramark-provided meals at both TCIX and NWCX—suggesting that its accommodations for medically prescribed diets are governed by company policy—the Court finds for purposes of initial review that Plaintiff has stated a colorable claim of corporate liability. The claim against Aramark will therefore be allowed to proceed.

Because the official-capacity claims against Aramark employees Powers, Adkinson, and Breece are effectively against Aramark, the corporation that employs those individuals, *see Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003), such claims are redundant of the claim against Aramark and subject to dismissal on that basis. *See Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014) ("Where the entity is named as a defendant, an official-capacity claim is redundant."). The individual-capacity claims against these Defendants will be allowed to proceed however, because the complaint charges them with knowingly providing meals that do not accord with Plaintiff's prescribed diet and that they personally knew he could not eat.

Regarding Plaintiff's claims against Warden Genovese and Associate Warden Oakes, the official-capacity claims against these state employees must be dismissed because Plaintiff does not seek to enjoin their official conduct, but merely names them in their capacities as state officials. Such claims are tantamount to claims against the State of Tennessee, which is not a "person" subject to suit under Section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64–66, 71 & n.10 (1989). However, Plaintiff's individual-capacity claims against Warden Genovese and Associate Warden Oakes will be allowed to proceed, as he specifically alleges their personal

involvement in the deprivation of his Eighth Amendment rights by (1) their knowing acquiescence in the provision of meals to Plaintiff that did not comply with his medical prescription; (2) in the case of Genovese, his repeated overriding of grievance committee findings in Plaintiff's favor with regard to his food service; and (3) in the case of Oakes, his instruction to a prison doctor not to specify the foods that should be served to Plaintiff. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that supervisory official's failure to control or correct wrongful conduct is actionable if official "either encouraged the specific incident of misconduct or in some other way directly participated in it," such as by "knowingly acquiesc[ing] in the unconstitutional conduct").

Plaintiff also potentially alleges a colorable claim of First Amendment retaliation against Oakes, based on events that occurred in response to one or more of the following three discoveries by Oakes: (1) that Plaintiff reported Oakes's threats of rape and murder (*see* Doc. No. 1 at 13 & n.14); (2) that Plaintiff was attempting to document a policy violation based on the fact that he was passed over for the job of library legal aide in favor of an unqualified inmate (*see* Doc. No. 1 at 16; Doc. No. 1-1 at 3); and/or (3) that Plaintiff assisted another inmate in filing a complaint against Oakes (*see* Doc. No. 1-14 at 1). However, if Plaintiff seeks to proceed with a First Amendment claim against Oakes, he must file an amended complaint in order to clarify the events which he claims to have produced a retaliatory response and the date of their occurrence.

Finally, Plaintiff's due process claims against Christa Jenkins and Joanna Cooper concerning his inmate job assignment and a $25.00 deduction from his trust account, respectively, must be dismissed. The Sixth Circuit consistently has found that prisoners do not have any liberty or property interest in prison employment, and thus cannot claim a due process violation based on the loss of a prison job. *See Perry v. Horton*, No. 2:18-cv-200, 2019 WL 311796, at *6 (W.D. Mich. Jan. 24, 2019) (citing, *e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001)).

Furthermore, courts have held that "the availability of post-deprivation grievance procedures . . . provide adequate procedural safeguards to protect the inmates' Fourteenth Amendment due process rights" in cases where fees are deducted from their accounts. *Sickles v. Campbell Cnty., Kentucky*, 439 F. Supp. 2d 751, 756 (E.D. Ky. 2006), *aff'd*, 501 F.3d 726 (6th Cir. 2007). Here, it appears that after Plaintiff was notified of the pending charge against his account, he was heard (both pre- and post-deprivation) to argue that the deduction was improper because he had not failed to take his meal tray as charged, but had simply failed to sign the appropriate form to demonstrate that he had taken the tray. (*See* Doc. Nos. 1-6, 1-7, 1-8.) It further appears that Plaintiff received a response from Defendant Cooper concerning his objection to the billing. (Doc. No. 1-8 at 3.) Regardless of the resolution of Plaintiff's complaint about the $25.00 deduction from his trust account, it is clear that he cannot plausibly claim a violation of his constitutional right to due process under these circumstances.

### III. FURTHER ACTION

As described above, the Court finds that the complaint states nonfrivolous claims against Defendants Aramark Services, Inc., Powers, Adkinson, Breece, Genovese, and Oakes. Accordingly, the Clerk is **INSTRUCTED** to send Plaintiff service packets (blank summonses and USM 285 forms) for each of these six Defendants. Plaintiff **MUST** complete the service packets and return them to the Clerk's Office within **21 days** of the date of this Order. Upon return of the completed service packets, **PROCESS SHALL ISSUE**.

The complaint fails to state a claim against Defendants Jenkins or Cooper. These Defendants are therefore **DISMISSED** from this action.

The Court's determination that the complaint states a colorable claim for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons

10

set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

This action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE