IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

CALVIN TANKESLY, JR.                    )
                                        )
        v.                              )        NO.    1:20-00017
                                        )
ARAMARK SERVICES, INC., et al.          )


**TO:   Honorable William L. Campbell, Jr., District Judge**


# R E P O R T   A N D   R E C O M E N D A T I O N

By Memorandum and Order entered September 28, 2020 (Docket Entry No. 4), this prisoner civil rights action was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Presently pending before the Court are separate motions for summary judgment filed by Defendants Aramark Services, Inc., Daniel Powers, and David Breece (Docket Entry No. 60)[1] and Defendant Stacy Oakes (Docket Entry No. 63). For the reasons set out below, the undersigned respectfully recommends that the motion of Defendants Aramark Services, Inc., Daniel Powers, and David Breece be denied and the motion of Defendant Stacy Oakes be granted in part and denied in part.

---

[1]The motion was also filed on behalf of Ralph Atkinson but he was subsequently dismissed from the case. *See* Order entered December 6, 2021 (Docket Entry No. 84).

# I. BACKGROUND

Calvin Tankesly, Jr., ("Plaintiff") is a life-sentenced inmate of the Tennessee Department of Correction ("TDOC") currently confined at the Bledsoe County Correctional Complex ("Bledsoe") in Pikeville, Tennessee ("STRCF"). On April 2, 2020, Plaintiff filed this *pro se* and *in forma pauperis* lawsuit under 42 U.S.C. § 1983 based on allegations that his federal constitutional rights were being violated at the Turney Center Industrial Complex ("Turney Center") in Only, Tennessee, where he was confined at the time.[2] *See* Complaint (Docket Entry No. 1). He subsequently filed an amended complaint expounding upon some of his claims. *See* Amended Complaint (Docket Entry No. 23). As relief, Plaintiff seeks an award of compensatory and punitive damages, as well as any declaratory and injunctive relief to which he may be entitled.

The following four Defendants remain in the case: Aramark Correctional Services, LLC ("Aramark"), a private corporation that has contracted with TDOC to provide meal services to the Turney Center and other TDOC facilities; Aramark employees Daniel Powers ("Powers") and David Breece ("Breece") (hereinafter referred to collectively as "the Aramark Defendants"); and former Turner Center Associate Warden Stacy Oakes ("Oakes").[3] Pretrial activity has occurred pursuant to a scheduling order (Docket Entry No. 34), and, although the parties demand a jury trial, a trial date has not been scheduled pending resolution of the dispositive motions.

---

[2] Plaintiff was transferred from the Turney Center to another TDOC facility on or about June 2, 2021. *See* Change of Address Notice (Docket Entry No. 51).

[3] Four Defendants have been dismissed: Christa Jenkins and Joanna Cooper were dismissed upon initial review of the case under 28 U.S.C. §§ 1915(e)(2)(b) and 1915A, *see* Memorandum and Order at 10; former Turney Center Warden Kevin Genovese ("Genovese") was dismissed upon his motion, *see* Order entered June 11, 2021 (Docket Entry No. 50); and Atkinson was dismissed upon Plaintiff's motion. *See* Order entered December 6, 2021 (Docket Entry No. 84).

Plaintiff suffers from permanent damage to his throat and teeth as a result of receiving radiation treatment in 2013 for throat cancer. The lining of his throat is damaged and he has no ability to produce saliva because of damage to his saliva glands. This makes it difficult for Plaintiff to eat and swallow food items. To facilitate Plaintiff's ability to eat, prison medical staff have consistently issued therapeutic diet orders that require him to be served something other than the standard meals served to inmates. In accordance with TDOC Policy #133.35, Therapeutic Diets, such orders must be renewed every three months and are to be both recorded on a Therapeutic Diet Order form, Form CR-1798, and documented on a Physicians' Order Form, Form CR-1892.

This lawsuit primarily involves an Eighth Amendment claim brought against all Defendants based on Plaintiff's allegations that he was not provided with meals that complied with the therapeutic diet orders and, as a result, he was unable to eat many foods that he was served and he received inadequate nutrition from his meals. *See* Memorandum and Order at 6-9. Plaintiff alleges that he has experienced constant problems obtaining meals that complied with the orders since Aramark was awarded the food service contract in 2016 and that these problems continued after he was transferred to the Turney Center in January 2019. Plaintiff alleges that his diet orders called for him to receive a "non standard diet," but that he was instead provided with a "bland diet," that included foods that he cannot eat, such as "ground processed meats, dry rice, dry noodles, apples, etc." *See* Complaint at 10-11. He asserts that his diet orders also specifically required that he be provided with extra gravy, jelly, and margarine at each meal, but the Aramark Defendants failed to serve these times to him at lunch and dinner. Although he contends that breakfasts typically complied with his prescribed diet, he contends that he did not receive proper

breakfasts when the Turney Center was under lockdown, nor did he receive breakfast at all on the weekends. *Id*. at 12.

As a result of Defendants' actions, Plaintiff alleges that he "suffer[ed] from lack of nutrition well below the minimal 2,500 calories a day resulting in debilitating health and a diminished quality of life." *Id*. at 8. He alleges that he suffered "weight loss, dizzy spells, light headedness, fatigue, and seizures from lack of sufficient nutrition" *id*. at 9, and that the Aramark Defendants' failure to comply with his dietary needs required the medical staff to provide daily nutrition supplements to him compensate for the inadequate meals. *Id*. at 12. Plaintiff alleges that Defendant Oakes knew of the issues with Plaintiff's meals but failed to rectify the situation and instead directed a prison doctor "not to write specific orders" regarding Plaintiff's medical diet. *Id*. at 11.

In addition to his Eighth Amendment claim, Plaintiff brings a First Amendment retaliation claim against Oakes based on allegations that Oakes took actions against Plaintiff because of Plaintiff's assistance to another inmate in litigating a lawsuit and because of Plaintiff's own litigation and grievance activities. *See* Amended Complaint. Specifically, Plaintiff alleges that Oakes wrongfully placed Plaintiff in segregation in May 2019 based on a false disciplinary charge and kept him in segregation in violation of TDOC policy for 28 days. *Id*. at 8-9. He further alleges that Oakes (1) verbally threatened to have Plaintiff transferred to a more dangerous TDOC facility, (2) interfered with Plaintiff's prison job by conspiring with another staff member to assure that Plaintiff did not receive particular prison job assignment and received a low paying prison job assignment, and (3) interfered with Plaintiff receiving his proper meals by his alleged verbal directive to a prison doctor about Plaintiff's prison diet. *Id*. at 8-10.

4

## II. MOTIONS FOR SUMMARY JUDGMENT

The Aramark Defendants move for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. They support their motion with a statement of undisputed material facts (Docket Entry No. 62) and with several exhibits: documents generated upon Plaintiff's filing of prison grievances, portions of Plaintiff's TDOC medical records, Aramark and TDOC documents related to Plaintiff's diet, TDOC's contract with Aramark, a printout of Plaintiff's prison commissary purchases at the Turney Center, TDOC Policy #113.35 for "Therapeutic Diets," copies of Defendants' discovery responses, and a transcript of Plaintiff's deposition. *See* Docket Entry Nos 62-1 to 62-20.

The Aramark Defendants' arguments for summary judgment in their favor are summarized in their motion as follows:

> the undisputed facts establish that Tankesly has gained weight since Aramark began providing food services and weight loss is a key indicia of lack of nutrition. Further, Tankesly's statements and commissary purchases, and diet orders and statements from Tennessee Department of Correction dietitian Adrianne Sims, paint a picture of a prisoner who simply wants to eat what he prefers, not a prisoner who is being fed a diet he cannot eat. As the Eighth Amendment does not concern itself with an inmate's dietary preferences, as opposed to nutritional or religious needs, the Aramark Defendants are entitled to summary judgment.

*see* Motion (Docket Entry No. 60) at 1-2; and are further summarized in more detail in their supporting memorandum as follows:

> The Aramark Defendants are entitled to summary judgment because the record does not support Tankesly's claims. First, since Aramark began providing Tankesly with meals in late August of 2016, there has been no loss in weight. Tankesly went from 162 pounds on October 19, 2016 to 187 pounds, as of November 5, 2020. Further, any alleged issues with tooth breakage began before Aramark began providing services to Tankesly and no other health issues are documented that did not exist before Aramark began providing food services. Second, the Tennessee Department of Corrections ("TDOC") nutritionist overseeing Tankesly clarified that it is not a matter of what is being fed to Tankesly, it is Tankesly's own personal preferences,

5

and this is reflected in Tankesly's deposition testimony and commissary purchases. Regardless, the dietitian stated on multiple occasions that Tankesly is receiving adequate nutrition. Third, as it relates to Aramark's liability, Tankesly admits that his claim regarding the food at the Northwest Correction Facility ("Northwest) relates to one single Aramark employee taking and throwing away trays of food that Tankesly could eat, not a general practice to deliberately fail to provide Tankesly a medically prescribed diet. Thus, no reasonable juror can find in favor of Tankesly based upon the undisputed facts and the Aramark Defendants are entitled to summary judgment.

*See* Memorandum in Support (Docket Entry No. 61) at 2.

Defendant Oakes moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. He supports his motion with a statement of undisputed material facts (Docket Entry No. 65), his own affidavit (Docket Entry No. 58), the affidavit of Dustin Mackin (Docket Entry No. 59), and excerpts from Plaintiff's deposition (Docket Entry No. 65-1). Defendant Oakes argues that there is no evidence supporting a reasonable conclusion that Plaintiff was subjected to an adverse action that was causally connected to a retaliatory animus on the part of Oakes. *See* Memorandum in Support (Docket Entry No. 64) at 4-5. Instead, Defendant Oakes contends that the evidence shows that Plaintiff's placement in segregation and his removal from his prison job assignment were due to his misuse of a prison computer that led to a prison disciplinary proceeding in which Plaintiff pled guilty to a disciplinary offense. *Id.* Oakes further contends that there is no evidence substantiating Plaintiff's allegation that Oakes directed a prison doctor to not include certain food in Plaintiff's prison diet, no evidence of Oakes' awareness of a substantial risk of serious harm to Plaintiff caused by any issues with Plaintiff's prison meals, and no evidence showing that Oakes had any involvement in the creation of Plaintiff's diet or the provision of prison meals to him. *Id.* at 6-7.

6

### III. PLAINTIFF'S RESPONSES

Although Defendants' motions were timely filed under the scheduling order, the deadline for Plaintiff to file his responses was held in abeyance for several months because of the lengthy period of time it took to resolve the issues of whether Plaintiff had been provided with a complete copy of the Aramark Defendants' motion and with his complete prison medical file as part of discovery.[4] By Order entered January 19, 2022 (Docket Entry No. 90), the Court ultimately set February 11, 2022, as Plaintiff's response deadline, with a reply deadline for Defendants seven days thereafter. Although Plaintiff filed a motion to extend his response deadline, the Court denied this motion. *See* Order entered February 8, 2022 (Docket Entry No. 94). Plaintiff's responses to both motions for summary judgement, *see* Docket Entry Nos. 97-106, were docketed into the record approximately two weeks after the February 11 response deadline; however, Plaintiff certifies in his responses that they were submitted for mailing prior to the response deadline. Given Plaintiff's *pro se* and incarcerated status and given the substantial nature of both his underlying Eighth Amendment claim and the substance of his responses, the Court provides Plaintiff with a great measure of leeway and shall consider his responses despite their untimely filing on the docket.

Plaintiff's responses are twofold. First, he argues that Defendants have not satisfied their initial burden of showing that there is an absence of genuine issues of material fact and that they are entitled to summary judgment as a matter of law. Second, he argues that there is sufficient

---

[4]*See* Orders entered August 10, 2021 (Docket Entry No. 67); September 2, 2021 (Docket Entry No. 70); September 27, 2021 (Docket Entry No. 74); October 22, 2021 (Docket Entry No. 78); November 12, 2021 (Docket Entry No. 80); and December 22, 2021 (Docket Entry No. 87).

7

evidence in the record that supports his claims and that there are numerous factual disputes regarding his claims that must be resolved at trial. With respect to his Eighth Amendment claim, he primarily argues that the Aramark Defendants' contention that this case involves merely the desire of Plaintiff to have preferred food served to him is a mischaracterization of the evidence and a minimization of the significant medical need he has regarding foods that he can eat. With respect to his First Amendment retaliation claim against Oakes, Plaintiff disputes Defendant Oakes' account of the events surrounding Plaintiff's placement in segregation and disputes that Oakes has presented evidence supporting his claim that a disciplinary proceeding occurred. Plaintiff contends that the evidence in the record shows that Oakes has a history of retaliating against other inmates and can reasonably be viewed as supporting a conclusion that Plaintiff was likewise retaliated against by Oakes.

In support of his response to the Aramark Defendants' motion, Plaintiff submits: (1) a memorandum of law (Docket Entry No. 98) and objection (Docket Entry No. 99); (2) a response to the Aramark Defendants' statement of undisputed material facts (Docket Entry No. 101); (3) his own affidavit (Docket Entry No. 100); (4) the affidavit of TDOC inmate James Brown (Docket Entry No. 98-8 at 24-26); (5) an unsworn statement of TDOC inmate Steven Dockery (Docket Entry No. 98-8 at 23); and nearly two hundred pages of exhibits, consisting of articles about Aramark, copies of letters Plaintiff has written to various prison officials, copies of portions of his TDOC prison medical records, a meal log generated by Plaintiff for the meals he was served at the

Turney Center in January and February 2019, and copies of other prison and Aramark documents related to his meals and Plaintiff's diet.   *See* Docket Entry Nos. 98-1 to 98-8.[5]

In support of his response to Defendant Oakes' motion, Plaintiff submits: (1) a memorandum of law (Docket Entry No. 103) and objection (Docket Entry No. 104); (2) a response to the Aramark Defendants' statement of undisputed material facts (Docket Entry No. 106); (3) his own affidavit (Docket Entry No. 105); (4) the affidavits of TDOC inmates Jason Randolph (Docket Entry No. 103-1 at 22-23), Tony Billings (Docket Entry No. 103-2 at 26-27), and Steven Smith (Docket Entry No. 103-1 at 28-33 ); and several pages of exhibits, consisting of letters Plaintiff wrote to TDOC and other government officials complaining about Oakes, an unsworn statement from inmate Randolph, copies of grievances filed by other inmates about Oakes, and a single page of Plaintiff's medical records.   *See* Docket Entry Nos. 103-1.

## IV.   STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Rule 56(a) of the Federal Rules of Civil Procedure.   *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for

---

[5]As part of his response to the motion of the Aramark Defendants and the basis for a separately filed motion to show cause (Docket Entry No. 91), Plaintiff objects to the fact that counsel for the Aramark Defendants has obtained his medical records and used them in support of the motion for summary judgment.   By a separately entered order, the Court will address the motion, but for the purposes of determining the motions for summary judgment, the Court rejects Plaintiff's objection and finds no issue with the Aramark's use of Plaintiffs' medical records given that Plaintiff has placed his medical history and problems at issue by filing this lawsuit.

9

the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, at 249-50. "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (*quoting Anderson*, 477 U.S. at 252).

## V.   ANALYSIS

### A. Applicable Constitutional Standards

The Eighth Amendment prohibits prison officials[6] from subjecting prison inmates to cruel and unusual punishment.   Encompassed within this general protection is both the right of an inmate to not have his serious medical needs treated with deliberate indifference by prison officials, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001), and the right of an inmate to not be subjected to conditions of confinement that violate contemporary standards of decency because the inmate has been deprived of basic human needs or subjected to other intolerable conditions. *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981).

Although complaints relating to the food served in prisons are generally far removed from constitutional concern, the deprivation of a life's necessity, such as food or water, can constitute a violation of the Eighth Amendment.   *See Dellis v. Corrections Corp. of Am.*, 257 F.3d 508, 512 (6th Cir. 2001).   Eighth Amendment protections are implicated by a claim that inadequate nutrition is being provided, *see Robinson v. Jackson*, 615 Fed.App'x 310, 314 (6th Cir. 2015); *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977), *Mooneyhan v. D.D.C. Nashville, TN Det. Ctr.*, 2021 WL 1174581, at *3 (M.D.Tenn. Mar. 29, 2021) (Richardson, J.), and by a claim that an inmate's meals do not comply with, or contradict, a medically prescribed diet.   *See Boles. v. Aramark*, 2018 WL 3854143 at * 3 (6th Cir. March 19, 2018); *Blau v. Fortescue*, 2019 WL

---

[6]The Court has already found that the Aramark Defendants act under color of state law for the purposes of   42 U.S.C. § 1983.   *See* Memorandum and Order (Docket Entry No. 4) at 7.

11

2612932, at *4 (E.D.Mich. June 26, 2019) (evidence of the denial of meals that complied with medically ordered diet supported inmate's Eighth Amendment claim).

A prison inmate likewise retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974). Among these rights is the right to pursue grievances and lawsuits against prison officials. *Pell*, 417 U.S. at 822; *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). Thus, prison officials cannot retaliate against a prison inmate based upon the inmate's exercise of his First Amendment rights. *See Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005); *Smith v. Campbell*, 250 F.3d 1032, 1036-37 (6th Cir. 2001); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

## B. Eighth Amendment Claim

The Court has read and reviewed the entirety of the parties' summary judgment filings on this claim. After such review, the Court finds that genuine issues of material fact exist with respect to the claim. Although this is a close call, the Aramark Defendants have not shown that there is an absence of genuine issues of material fact and that they are entitled to summary judgment as a matter of law.

As an initial matter, the Court rejects any suggestion by the Aramark Defendants that this is a case of "a prisoner who simply wants to eat what he prefers." *See* Motion for Summary Judgment at 1. Such a characterization minimizes the underlying medical issues from which Plaintiff suffers and the day-to-day impact upon a basic need of human existence. Any fair reading of the record shows that this claim is not one brought by an inmate who merely dislikes the prison food that he is being fed or who wants better or different food. If that were the case,

12

dismissal of the claim would be warranted in quick course. To the contrary, this is a claim brought by an inmate who has significant medical complications that severely impact his ability to eat in the normal manner and, consequentially, his ability to gain nutrition through the ingestion of the food. These complications are permanent and necessitate on-going medical treatment in the form of therapeutic diet orders and the prescription of various medications. There is no real dispute as to these facts.

In the Court's view, the major shortcoming of the Aramark Defendants' request for summary judgment is that they only address the edges of Plaintiff's claim, providing evidence and arguments that Plaintiff has sufficiently rebutted or raised factual issues about, instead of entering into the record evidence that goes to the crux of the claim; i.e., evidence that shows that the meals served to Plaintiff consistently complied with his therapeutic diet orders and provided him with the level of nutrition required by the Eighth Amendment. Indeed, although this claim is premised upon (1) Plaintiff's medical and nutritional needs related to his ability to eat and (2) the adequacy of the actual food he was served at the Turney Center with respect to those needs, the Aramark Defendants have not supported their motion with testimony from any medical provider who treated Plaintiff, testimony from any dietician who dealt with Plaintiff's food and nutritional needs, or testimony from any Aramark food service employee regarding diet plans, compliance with Plaintiff's therapeutic diet orders, or even the food that was actually served to Plaintiff.

For example, the Aramark Defendants rely heavily upon the fact that Plaintiff did not suffer weight loss while at the Turney Center. This is an understandable argument given that weight loss by an inmate is an indicia of a lack of nutrition and is a factor that has been relied upon by courts in analyzing the merits of Eighth Amendment food claims. However, as Plaintiff correctly

13

points out, he was prescribed and took daily nutritional supplements that increased his daily calorie and nutrition intake. Thus, one reasonable reading of the evidence is that the food Plaintiff was served at the Turney Center was nutritionally deficient for his unique needs and that nutritional supplements were required for him to maintain adequate human nutrition. Evidence from a medical care provider or a dietician or nutritionist would certainly be illuminating on the issue of the interplay between Plaintiff's meals and the need for nutritional supplements, but such evidence is not before the Court.

Also absent from the record is any actual evidence from the Aramark Defendants showing what food was served to Plaintiff while at the Turney Center, let alone showing that this food complied with Plaintiff's specific therapeutic diet orders and was nutritionally sufficient.[7] In contrast, Plaintiff has provided a detailed compilation of the meals that he was served during a 30-day window period, during which he alleges that he was regularly not provided with specific food items such as gravy, jelly, margarine, and sliced tomatoes, as required under his diet orders. *See* Docket Entry No. 98-7 at 18-21. He also testified in his deposition to regularly being denied the additional gravy that he was supposed to be served and being served less food than other inmates. *See* Deposition at 40-41, 48-49, and 137-39. Further, Plaintiff has entered into the record some evidence as to the nutritional content of the food that he was served. *See* Docket Entry No. 98-7 at 12-13 and 18-21. While Plaintiff's evidence is not as polished as what would be expected from a party who is not a prison inmate and who is not proceeding *in forma pauperis* and *pro se*, his

---

[7]Although the Aramark Defendants assert in their supporting memorandum that "the dietitian stated on multiple occasions that Tankesly is receiving adequate nutrition," *see* Docket Entry No 61 at 2, the Court finds that the record does not support this assertion and that there is no actual testimony before the Court from any dietitian.

layman's evidence nonetheless provides some modicum of affirmative evidence as to an issue that supports Plaintiff's claim. At a minimum, a genuine issue of material fact exists on this issue.

The Aramark Defendants accurately point out that there is no medical evidence documenting that Plaintiff suffered any health complications as a result of an alleged lack of nourishment. *See* Memorandum in Support at 9-10. However, Plaintiff argues that, even though his medical records may not verify his complaints, he made complaints about dizzy spells, light headedness, fatigue, and seizures to medical personal. Regardless of this factual dispute, the Court finds that Plaintiff's own deposition testimony about the physical difficulties that he has to endure attempting to eat a non-compliant diet[8] provides a sufficient level of suffering to support his Eighth Amendment claim given the unique factual circumstances of this case.

The Court notes that the evidence in the record shows that, at various times, Plaintiff 's therapeutic diet orders required that he receive a "bland diet" or that he receive a "non-standard diet," *see* Docket Entry No. 62-9, 62-20, 98-6 at 21-30, and 98-7 at 1-11, and the TDOC therapeutic diet form CR-1798 specifically notes these types of diets as distinct diets. This distinction may be significant or it may not be; there may also be no actual difference in the diets other than terminology. However, in the absence of explanatory evidence, the Court is left to speculate about whether serving Plaintiff a "bland diet" complied with a therapeutic diet order for a "non-standard diet." Because the evidence shows that Plaintiff was provided with a "bland diet" by Aramark during times when the therapeutic diet orders required him to be served a "non-standard diet," a genuine issue of material fact exists as to this issue based on the evidence that is before the Court.

---

[8] *See* Plaintiff's Deposition at 34-35, 50-52, and 85-87.

For these reasons, the Court finds that genuine issues of material fact exist as to the objective component of Plaintiff's Eighth Amendment claim. The Court now turns to whether sufficient evidence exists to support a finding of culpability on the part of Defendants.

The touchstone of culpability under the Eighth Amendment for Plaintiff's claim is whether the defendants acted with deliberate indifference towards Plaintiff with respect to his need for meals that complied with his therapeutic diet orders. *See Farmer*, 511 U.S. at 834. After review of the record, the Court likewise finds that genuine issues of material fact exist as to all Defendants on the issue of culpability.

Defendants Breece and Powers' request for summary judgment is entirely premised upon the argument that Plaintiff is unable to support the objective component of his Eighth Amendment claim. *See* Memorandum in Support at 10. Given the Court's determination that summary judgment is not warranted based upon this argument, Defendants Breece and Powers fail to show any other basis for granting their request for summary judgment.

With respect to Defendant Aramark, a showing of liability under Section 1983 for a corporate actor cannot be based upon a theory of *respondeat superior*. *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996). In a manner similar to a Section 1983 claim brought against a municipality, *see Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691-94 (1978), a claim against Aramark must be premised upon facts showing that a policy, custom, or practice of Aramark caused the deprivation of Plaintiff's constitutional rights. *Street*, *supra*. *See also Starcher v. Correctional Med. Sys., Inc.*, 7 Fed.App'x. 459 (6th Cir. March 26, 2001) (applying policy requirement to private medical provider in a prison medical care case). This requires facts sufficient to show that the execution of an Aramark policy or custom was the

"moving force" behind the violation of the constitutional rights at issue. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *Maxwell v. Corr. Med. Servs., Inc.*, 538 Fed.App'x 682, 691 (6th Cir. 2013).

Defendant Aramark contends that Plaintiff cannot establish that any policy or custom of Aramark caused the alleged constitutional injury at issue. Aramark initially argues:

> this Court allowed Tankesly's claim against Aramark because Tankesly allegedly made a similar claim against an Aramark employee while Tankesly was a prisoner at Northwest. Document 4, p. 7, 8. In Tankesly's deposition, however, Tankesly admitted that his claim in the prior case is directed at one specific employee, a "bad apple", who would take his tray that contained food he could eat and throw it away. Defendants' SOMF, ¶ 51. The actions of a single employee at a prior facility are not indicative of a custom or policy of Aramark.

*See* Memorandum in Support at 61 at 10.

The Court is not persuaded by this argument. First, Aramark reads the Court's prior memorandum and order too narrowly. While the Court acknowledged that Plaintiff's allegations of conduct at the Northwest facility could be viewed as supporting a colorable claim that the alleged issues with Plaintiff's meals were due to a company policy, the Court in no way permitted the claim to proceed only because of Plaintiff's allegations of similar conduct at the Northwest facility and in no way limited Plaintiff's ability to prove his claim to necessarily include evidence of a policy or custom at the Northwest facility. Second, Plaintiff has adequately rebutted Aramark's argument regarding the "bad apple" comment. *See* Plaintiff's Memorandum of Law (Docket Entry No. 98) at 5-6; Plaintiff's Response to Statement of Undisputed Material Facts (Docket Entry No. 101) at 6, ¶ 51.

Defendant Aramark then sets out its second argument on the issue of culpability as follows:

> Aramark established that it follows the diet order submitted by TDOC's registered dietitian Adrianne Sims, and that, pursuant to Aramark's contract with TDOC,

> Aramark is required to serve a therapeutic diet, such as a non-standard or bland diet, in accordance with State policy. Defendants' SOMF, ¶¶ 14, 25-27. Thus, regardless of the merits of the claims against the individual Defendants, the claim against Aramark must be disposed of at summary judgment as Aramark is following a custom or policy of the TDOC, not Aramark, in serving Tankesly the non-standard diet approved by Ms. Sims.

*See* Memorandum in Support at 61 at 10-11.

The Court is likewise not persuaded by this argument because it is essentially based upon material issue of fact that are genuinely in dispute. Indeed, the Court has already determined that factual questions exist as to whether Aramark did, in fact, follow Plaintiff's therapeutic diet orders and whether it actually served Plaintiff a "non-standard diet." Further, the Court finds that Plaintiff has presented factual evidence showing a long-term and repeated failure on the part of Aramark food service employees to provide him with meals that complied with the therapeutic diet orders and were nutritionally adequate. There is also evidence in the Plaintiff's medical records suggesting that there was push-back regarding medically suggested or ordered dietary recommendations for Plaintiff at the Turney Center. *See* Docket Entry No. 62-10 at 2 ("There is resistance to providing the recommended dietary changes for this i/m. I am told he is not able to receive the previous changes provided when here"); Docket Entry No. 62-6 at 8. This evidence, if believed by the trier of fact, could support a reasonable conclusion that the issues Plaintiff experienced with his meals were the result of a custom or policy of Aramark, as opposed to merely the result of the singular acts of an individual Aramark employee.

In summation with respect to the Aramark Defendants, the Court finds that genuine issues of material fact exist that require the denial of these three Defendants' motion. The Court cannot say that, as a matter of law, no reasonable jury could find in favor of Plaintiff on his Eighth Amendment claim based on the evidence that is before the Court. Because significant genuine

issues of material fact exist as set out herein that are sufficient to warrant the denial of the motion, it is not necessary to address every factual dispute that appears to exist as to this claim.

With respect to Defendant Oakes, it is again a close case but the Court finds that genuine issues of material fact exist that warrant the denial of summary judgement to Oakes on this claim. Although there is no evidence that Oakes was personally involved in food service at the Turney Center or the provision of meal to Plaintiff, Plaintiff claims that Oakes instructed a prison medical doctor in November 2019 to "not write specific food items in Tankesly's diet." *See* Amended Complaint at 12.

Although Oakes denies asking a doctor to not prescribe certain meals or food for Tankesly, *see* Affidavit of Oakes at ¶ 8, Plaintiff rebuts this denial with his own deposition testimony that he heard Oakes make statements "Do not change – Do not write that down what he can eat on that diet. We're not doing that here." *See* Plaintiff's Deposition at 36. This creates a genuine issue of material fact on this claim. If Oakes made the statement as alleged, a reasonable jury could find that, although Oakes is not a medical care provider, he took steps to intervene in the medical determination of Plaintiff's therapeutic diet needs to Plaintiff's determinant and in a manner that would support constitutional liability given his status as an associate warden at the Turney Center. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that supervisory official's failure to control or correct wrongful conduct is actionable if official "either encouraged the specific incident of misconduct or in some other way directly participated in it," such as by "knowingly acquiesc[ing] in the unconstitutional conduct"). Because Defendant Oakes' incorrectly contends that Plaintiff's allegation is not substantiated by any evidence, *see* Memorandum in Support

(Docket Entry No. 64) at 6, n.2, and offers no real argument for summary judgment that considers this disputed fact, summary judgment as to this claim should be denied.

## C. First Amendment Retaliation Claim

Summary judgment should be granted to Defendant Oakes on this claim. No reasonable jury could find in favor of Plaintiff on the claim based upon the evidence that is before the Court.

To establish a claim of retaliation that rises to the level of a First Amendment claim, Plaintiff must show that: 1) he engaged in protected conduct; 2) a sufficiently serious adverse action was taken against him that would deter a prisoner of "ordinary firmness" from continuing to engage in the protected conduct; and 3) there is a causal connection between the first two elements -- that is, the adverse action was motivated at least in part by Plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff has the burden of proof on all three elements. *Murray v. Unknown Evert*, 84 Fed.App'x. 553, 556 (6th Cir. Dec. 8, 2003).

To succeed on his claim, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the alleged retaliatory adverse actions. *Id.* at 556 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Conclusory allegations of retaliatory motive "with no concrete and relevant particulars" fail to raise a genuine issue of fact for trial. *Id.*; *see also El–Shabazz v. Shands*, 23 Fed.App'x 402, 405 (6th Cir. 2001) (a prisoner's conclusory allegations are insufficient to show that prison official was motivated by prisoner's exercise of his First Amendment rights).

In the instant case, even if the Court assumes that the evidence in the record is sufficient to support the first two elements of a retaliation claim, there is a dearth of evidence on the causal connection element. Although Plaintiff seeks to link the reason for the challenged events to

retaliation by Defendant Oakes, this linkage is essentially based upon Plaintiff's speculative and conclusory allegations that a retaliatory motive exists. As support for his claim, Plaintiff points to a single statement allegedly made by Oakes to Plaintiff that he [Plaintiff] was "one of those writ writers." *See* Amended Complaint at 7. However, the statement, even if construed as a derogatory statement about "writ writers," is not itself indicative of a retaliatory motive. The statement was also removed in both time and connection from any of the alleged retaliatory acts, most of which occurred several months after the alleged comment by Oakes. Such an isolated statement is simply insufficient evidence to support a conclusion that each of the several alleged adverse acts were acts substantially motivated by a retaliatory animus against Plaintiff because of his First Amendment activities.[9] The mere fact that Plaintiff actively engages in protected First Amendment activity that is known about by prison officials does not, as a matter of course, cause subsequently occurring adverse acts to become acts taken in retaliation against him.

Plaintiff's claim further warrants dismissal because he has not set forth evidence showing Oakes' actual involvement in removing Plaintiff from a prison job assignment or assigning him to a low paying prison job assignment – two of the alleged acts of retaliation – and because the undisputed evidence shows that Plaintiff pled guilty to the disciplinary charge which he alleges was manufactured by Oakes as an act of retaliation.[10]

---

[9]In this sense, the statement at issue in the instant case differs significantly from the statements made by the defendants in *Thaddeus-X*, which (1) directly linked the inmate's First Amendment activities with the adverse actions being taken against him and (2) expressed explicit retaliatory animus. *See* 175 F.3d at 384.

[10]Plaintiff appears to argue that a genuine issue of material fact exists because Defendant Oakes has not provided sufficient evidence showing that Plaintiff was subjected to a prison disciplinary charge. *See* Plaintiff's response to Oakes' statement of undisputed material facts at ¶¶ 2-3. Such an argument is completely spurious given that Plaintiff's own deposition testimony

The bulk of the evidence submitted by Plaintiff to rebut Defendant Oakes' motion consists of evidence about Oakes' alleged mistreatment of other inmates and acts of retaliation against the other inmates. This evidence simply does support Plaintiff's case. First, none of the evidence concerns the adverse actions alleged to have been taken against Plaintiff; it involves action taken against other inmates. Second, none of the evidence is probative of the necessary causal link required for Plaintiff's claim. Plaintiff cannot piggyback his retaliation claim upon evidence of purported retaliation that allegedly occurred with respect to other inmates.

## RECOMMENDATION

Based on the foregoing, it is respectfully RECOMMENDED that:

1) the motion for summary judgment of Defendants Aramark Services, Inc., Daniel Powers, and David Breece (Docket Entry No. 60) be DENIED; and,

2) the motion for summary judgment of Defendant Stacy Oakes (Docket Entry No. 63) be GRANTED with respect to Plaintiff's First Amendment retaliation claim but be DENIED with respect to Plaintiff's Eighth Amendment claim.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Rule 72(b)(2) of the Federal Rules of Civil Procedure and Local Rule 72.02(a). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District

---

is that he was charged with a prison disciplinary offense and pled guilty to the offense. *See* Plaintiff's Deposition at 20 and 22-24.

Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Federal Rule 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge